FINDLEY et al. v. LYNN.

No. 31648. Nov. 13, 1945.

Rehearing Denied Jan. 15, 1946.

*164 P. 2d 989.*

H. A. Johnson, of Perry, for plaintiffs in error.

Cress & Rosser, of Perry, for defendant in error.

DAVISON, J. This cause was commenced by A. F. Findley, now deceased. It was in the nature of a suit to quiet title and cancel a county commissioner's deed which had been issued to the defendant, C. H. Lynn. Upon the death of Findley the suit was revived in the name of her heirs. Plaintiff asserts title through a warranty deed from H. A. Johnson. Johnson's alleged title arises by virtue of a resale tax deed. The district court of Noble county upheld the county commissioner's deed to Lynn and declared void the prior resale deed to H. A. Johnson. Plaintiffs have appealed and appear before this court as plaintiffs in error. Our continued reference to the parties will be by their trial court designation.

In April of 1929, lots 11 and 12 in block 5 of the town of Red Rock were

offered for sale at tax resale. The record indicates that the lots were improved property and that there were due and delinquent taxes against lot 11 in the sum of $110.77 and that there were due and delinquent taxes against lot 12 in the sum of $114.54.

According to the testimony of H. A. Johnson he was present at the resale and bid for the property. He asserts the same was sold to him. On May 10, 1929, he received from the county treasurer of Noble county a resale tax deed purporting to convey the above mentioned property to him. The particular deed covered 50 or more lots and the lots in question were described as "lots 1 to 20, inclusive in block 5." There is no question about the other lots being unimproved and having been purchased by Johnson. The two lots in question had improvements thereon. The consideration paid by Johnson for each of the lots was 50 cents. It was recited in the resale deed that each of the lots was unimproved real estate.

Johnson's testimony on this phase of the case was contradicted by the testimony of W. J. Coleman, who had been city treasurer of Red Rock for 23 years. Mr. Coleman attended the 1929 resale and noticed that Mr. Johnson was there. Coleman testified that Johnson did not bid on lots 11 and 12 in block 5. He, Coleman, said the lots in question were improved property; that there was an old house and barn on them.

We then have the deed to Johnson plus his testimony that he purchased the lots. We have Coleman's testimony that Johnson did not buy the lots, coupled with the fact that the property in question was improved property and could not, under the law, be sold for the amount for which same was alleged to have been sold.

Additional light is cast upon the transaction by the record of this particular resale prepared by the county treasurer. That instrument shows Noble county as the purchaser of lot No. 12. As for lot 11 the name of H. A. Johnson and Noble county were both written as the purchaser. It is difficult to ascertain which purchaser was first indicated, but obviously a correction was made. It appears to the writer of this opinion that the name of H. A. Johnson was first written by mistake. The mistake was thereafter noted and a line was run through the name and the name Noble county was written over the same.

The county treasurer's return of the resale to the county clerk shows that both lots 11 and 12 were bought by Noble county for the full amount of delinquent taxes against the same.

It is thus apparent that the testimony of H. A. Johnson is in conflict with the records in the office of the county treasurer and county clerk and that it is contradicted by the testimony of the witness Coleman.

After hearing the evidence on this phase of the case the trial court concluded that H. A. Johnson did not purchase the property in question and that said property was in reality sold to Noble county, which was the purchaser.

Johnson retained the purported title to the property until September 18, 1930, when he executed a warranty deed to A. F. Findley.

Throughout the years after Johnson acquired the resale tax deed in 1929, he paid the taxes as they accrued on the property either in his own behalf or in behalf of Findley.

On the 3d day of April, 1939, the county treasurer of Noble county executed a resale tax deed to the chairman of the board of county commissioners of Noble county purporting to convey the property involved in this action. The deed recited a consideration of $110.77 for lot 11 and a consideration of $114.54 for lot 12.

The deed to the chairman of the board of county commissioners recited that it was given pursuant to an order and writ of mandamus in cause No. 5741 in the district court of Noble county, Okla. However, the property involved in this action was not involved nor de-

scribed in cause No. 5741 and the recitation in the deed to that effect was an error.

On October 9, 1940, C. H. Lynn made an offer to purchase lots 11 and 12 of block 5 of the town of Red Rock, bidding on each of the lots the sum of $5. The county treasurer caused notice of the bid to be published in a proper legal publication.

On November 1, 1940, the bid of Lynn was accepted as the highest bid and the board of county commissioners of Noble county ordered its chairman to execute to Lynn a county commissioner's deed. The deed was executed. Lynn claims the land as grantee in the deed.

In his answer and during the trial of this case Lynn failed to tender to the plaintiffs the taxes, penalties, interest and costs. The failure to make the tender is presented as one of the errors. The plaintiffs state that such a tender is vital to defendant's contention.

We have three statutes relating to tender in tax deed cases. They are 68 O. S. §§ 360, 453, and 455. Sections 360 and 455 may be disregarded since neither of those sections imposes any duty on a defendant to make a tender of taxes, etc.; however, section 453 must be carefully analyzed. That section provides in part:

" . . . to defeat the deed, the person desiring to set the same aside and recover the land, or to resist the recovery of possession by the holder of the deed in addition to showing clearly the entire failure to do some one or all the things of which the tax deed is made presumptive evidence, must show that he or the person under whom he claims, had the right to redeem the land from tax sale at the time the deed was made, and must, when his action to set aside the deed is brought, or a defense to a recovery of possession is pled, tender in open court for the use of the holder of the tax deed, all taxes, penalties, interest, and costs, which the party seeking to redeem would be bound to pay if he was then redeeming the land from tax sale, and on failure so to do, his

action or defense, as the case may be, shall be dismissed."

A careful reading of the foregoing statute indicates that it is limited to the record owner of land, that is, the person who would be entitled to redeem the land from tax sale. The section of the statute is not applicable in the case at bar because this case presents a conflict between persons, all of whom are claiming title by virtue of tax deeds and growing out of the same resale. Neither Lynn nor his grantor, Noble county, "had the right to redeem the land from tax sale" at the time the resale deed was executed to Johnson.

We are therefore of the opinion and hold that Lynn, as a subsequent purchaser of a tax title from the county, was not required to make the tender required by section 453, supra. His failure to make such tender was therefore properly excused. Since Findley, or his heirs, were never the owners of the land, the contention and assignment of error is without merit.

Complaint is also made that defendant had for a number of years rented the property in question from plaintiffs, and that since he was a tenant of plaintiffs, he was not in a position to obtain title at tax sale which would be superior to the title of his lessor. The record does not indicate that defendant was under obligation to pay the taxes on the premises.

The present action was clearly and solely a suit by plaintiffs to quiet title in plaintiffs and to declare the tax deed obtained by Lynn to be void and of no effect and to cancel same as a cloud upon plaintiffs' title. Since this was a case instituted by plaintiffs to quiet title, and to determine adverse claims of title, the defendant is not estopped to set up his superior title against the landlord.

In 32 Am. Jur. 127, it is said:

" . . . It seems now to be well settled, although the rule is of comparatively recent origin, that the doctrine of estoppel against the tenant does not

apply where the landlord prosecutes a suit against the tenant, tendering an issue of title and seeking a judgment which will preclude the tenant either as to the title in fee or, it seems, as to any interest in the land greater than that necessary to support the tenancy. . . ."

The annotation in 89 A. L. R. 1295, provides:

"Although it is the general rule that, so long as a tenant continues in possession under his lease, he is, in any proceeding commenced by him against his lessor, estopped to deny the latter's title, on the other hand, it is held that where the landlord himself prosecutes a suit against the tenant, tendering an issue of title and seeking a judgment which will preclude the tenant either as to the title in fee, or it seems as to any interest in the land greater than necessary to support the tenancy, the doctrine of estoppel against the tenant does not apply. . . ."

See, also, the cases cited in the foregoing annotation.

The above question as determined by the foregoing facts is one of first impression in this jurisdiction. However, this court has said in a number of cases that in an action to quiet title to real estate the plaintiff must rely on the strength of his own title and not the weakness of that of his adversary. Clark v. Duncanson, 79 Okla. 180, 192 P. 806; Gilchrist v. Sutton et al., 191 Okla. 117, 127 P. 2d 163; Newcomer v. Robison, 159 Okla. 236, 15 P. 2d 129.

The judgment is affirmed.

All concur.